IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:13-CV-14-D

| | |
|---|---|
| RICKEY M. DICKERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE # 24 & 26] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Rickey M. Dickerson ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The parties have fully briefed the issues and the case is now ripe for decision. This matter was referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's motion be allowed, the Commissioner's motion be denied, and this case be remanded to the Commissioner for further proceedings.

## BACKGROUND

**I. Statement of the Case**

Claimant protectively filed an application for DIB on March 1, 2010, alleging a disability onset date of May 26, 2009. (Tr. 99.) The application was denied initially and upon

reconsideration, and a request for hearing was timely filed. (Tr. 116, 120, 124.) On June 14, 2011, a hearing was held before Administrative Law Judge D. Randall Frye ("ALJ"), at which Claimant appeared and was represented by counsel. A vocational expert ("VE") also appeared and testified. (Tr. 63-69.) The ALJ issued a written decision on July 8, 2011, denying Claimant's application on the ground he is not disabled. (Tr. 25-35.) Following the unfavorable decision, Claimant retained new counsel and requested review by the Appeals Council. (Tr. 1.) In support of Claimant's appeal, counsel submitted treatment notes from Claimant's orthopedic surgeon, which had been requested by the ALJ but not submitted by Claimant's previous attorney prior to the ALJ's ruling. The Appeals Council admitted the new evidence but, on January 16, 2013, denied Claimant's request for review without making any specific findings regarding the evidence.[1] (Tr. 1-5.) As a consequence of the Appeals Council's ruling, the decision of the ALJ became the final decision of the Commissioner. Claimant then filed a complaint in this court seeking judicial review pursuant to 42 U.S.C. § 405(g).

## II.     Disability Evaluation Process

"Disability" is defined under the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

---

[1]In its order denying review, the Appeals Council stated:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(R. 1-2.)

2

Case 2:13-cv-00014-D   Document 30   Filed 02/14/14   Page 2 of 17

not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Regulations promulgated pursuant to the Act provide a five-step, sequential evaluation process that the ALJ must follow in evaluating a disability claim:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the [applicable] duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 404.1520(a)(4); *see also Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 474 n.2 (4th Cir. 1999).  The burden of proof and production during the first four steps of the inquiry rests on the claimant.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy that the claimant can perform.  *Id*.

3

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 405.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. § 404.1520a(e)(3).

Where there are multiple impairments, the ALJ must also "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, "the combined impact of the impairments will be considered throughout the disability determination process." *Id.*

## III. Factual History

### A. Social and Vocational History

At the time of the administrative hearing, Claimant was fifty-four years old. Claimant grew up working on farms and quit school after completing the eleventh grade. (R. 17, 70.) Claimant began working at the age of sixteen and worked in manual labor jobs from that time until May 2009. (R. 202.) His most recent job was performing maintenance work for an apartment complex, where he was required to lift 100 pounds or more at times and twenty-five pounds frequently. (R. 44, 219.) Prior to that, he drove a truck, hauling sand, gravel, stone, mulch, and other freight; performed sandblasting and other renovation work; removed bark from logs for a lumber company; and worked for hog farming operations. (R. 44, 218.) While working for the

4

lumber company in 1997, a log weighing 1,000 to 1,500 pounds rolled on top of Claimant, pinning him to the rollerbed. (R. 57, 225-26.)

Claimant testified to several medical conditions that led him to file his claim. Claimant's primary complaints relate to shoulder pain, bilateral knee arthritis, and fibromyalgia. Approximately six months before the administrative hearing, Claimant had surgery to repair a torn rotator cuff in his right shoulder. However, Claimant testified, "I still can't pick up much and I'm having a strain coming all the way from my shoulder . . . . My wrist and stuff is sore, swollen and stuff. It feels like pins and needles. My whole body just burns and aches." (R. 46-47.) Claimant has difficulty bending and walking due to arthritis in his knees. He estimated that he can walk approximately thirty to fifty feet at a time (R. 49), can stand fifteen to twenty minutes at a time (R. 51), and is unable to climb stairs. (R. 49.) Claimant stated that if he bends down, he is unable to stand back up, and that he has "to lay down and roll over and pull [himself] up." (R. 52.) Claimant also suffers from depression. (R. 47, 70, 275, 282.)

### B. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant has not been engaged in substantial gainful employment since May 26, 2009, the alleged disability onset date. (R. 27.) Next, the ALJ determined Claimant had the following severe impairments: depression, osteoarthritis of the right knee, status-post rotator cuff tear/impingement, fibromyalgia and gastroesophageal reflux. (R. 27.) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27.) Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have

5

resulted in mild restrictions of his activities of daily living and social functioning and moderate difficulties in his ability to maintain concentration, persistence and pace. (R. 28.) The ALJ also determined that Claimant has experienced no episodes of decompensation of extended duration. (R. 28.)

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform medium work, "except that the claimant would need an occasional opportunity to sit, would need a position that would require only occasional bending, stooping, squatting and would be limited to simple, routine and repetitive tasks." (R. 29.)

Based on the VE's testimony, the ALJ concluded at step four that Claimant did not have the RFC to perform the requirements of his past relevant work as "a lumbar [sic] worker, truck driver, hog farmer and apartment maintenance worker." (R. 33.) Nonetheless, at step five, upon considering Claimant's "closely approaching advanced age," limited education, work experience and RFC, the ALJ determined that Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (Tr. 34.)

## DISCUSSION

In his Motion for Judgment on the Pleadings, Claimant argues that the Commissioner's decision is not supported by the evidence for two reasons. First, Claimant contends that the ALJ failed to give appropriate weight to the medical opinion of Claimant's treating orthopedist. (Pl.'s Mem. Supp. Mot. J. Pleadings [DE #25] at 9-12.) Second, Claimant argues that the ALJ failed to properly assess Claimant's testimony. (Pl.'s Mem. Supp. Mot. J. Pleadings at 12-13.)

**I.      Standard of Review**

The scope of judicial review of a final agency decision regarding disability benefits under the Act is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance," *Laws*, 368 F.2d at 642.

In determining whether the Commissioner's decision is supported by substantial evidence, the court reviews the administrative record as whole, including any new evidence incorporated into the record following the ALJ's ruling. *Thomas v. Comm'r of Soc. Sec.*, 24 Fed. App'x 158, 162 (4th Cir. 2001); *Wilkins v. Sec'y, Dept. Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). "Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level." *Sanders v. Colvin*, No. 5:11-CV-773-D, 2013 WL 3777198, at *4, *Mem. & Recommendation adopted*, 2013 WL 3777198 (E.D.N.C. July 18, 2013). The court may not substitute its judgment for that of the Commissioner, nor may it make findings of fact or credibility determinations. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "In

7

order for this Court to determine whether the [Commissioner's] decision is supported by substantial evidence, [it] must first assess whether the Commissioner has provided adequate information to explain [the] decision." *Thomas*, 24 Fed. App'x at 161.

## II. Treating Physician's Opinion

Claimant contends that the ALJ failed to properly consider the opinion of Dr. Marc E. Ward, Claimant's treating orthopedist. In determining the appropriate weight to be accorded a physician's opinion as to the nature and severity of an impairment, the ALJ is guided by 20 C.F.R. § 404.1527. The general rule is that a treating source's opinion is entitled to more weight than a non-treating source's, and an examining source's opinion should be accorded more weight than the opinion of a non-examining source. 20 C.F.R. § 404.1527(c) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.").

A treating physician's opinion must be given controlling weight if it is well supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" of record. 20 C.F.R. § 404.1527(c)(2). The ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted).

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must determine the weight to be given the opinion, considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and

8

Case 2:13-cv-00014-D   Document 30   Filed 02/14/14   Page 8 of 17

extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) any specialty or expertise of the treating physician; and (6) any other factors tending to support or contradict the physician's opinion, such as the extent of the physician's understanding of the Social Security disability programs and the physician's familiarity with other information in the record. 20 C.F.R. 404.1527(c)(2)–(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). "Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is reserved for the Commissioner." *Parker*, 792 F. Supp. 2d at 894 (citing 20 C.F.R. § 404.1527(e)(1)).

In support of his disability claim, Claimant submitted a "Multiple Impairment Questionnaire" dated November 23, 2010, from his orthopedic surgeon. Dr. Ward had diagnosed Claimant with right shoulder rotator cuff tear and impingement, left shoulder impingement and right knee osteoarthritis, and indicated Claimant's prognosis was "fair." (R. 299.) Dr. Ward opined that Claimant suffers from moderately severe pain in his shoulders and knees (R. 300-01), that he cannot sit for more than two hours and is able stand or walk for less than one hour at a time in an eight-hour day (R. 301), that Claimant must get up and move around for five to ten minutes each hour (R. 301-02), and that he would need four to five unscheduled breaks during an eight-hour workday (R. 304.) Dr. Ward further opined that Claimant can occasionally lift or carry up to five pounds (R. 302), that Claimant has moderate limitations in his ability to grasp, turn, and twist objects (R. 302), is unable to reach overhead (R. 303), and would likely miss work more than three times per month due to his impairments (R. 305). Dr. Ward noted his opinions were supported by the following medically acceptable clinical findings and laboratory and diagnostic test results: reduced strength, positive impingement signs, positive O'Brien's test, tender medial

9

joint line, an x-ray showing narrowing of joint medial space in the right knee, and an MRI showing rotator cuff tear in his right shoulder. (R. 299-300.)

At the administrative hearing, the ALJ expressed concern that the record did not include any records concerning Dr. Ward's treatment of Claimant. (R. 58.) The attorney representing Claimant at the administrative hearing indicated he would submit Dr. Ward's medical records to the ALJ following the hearing. However, Claimant's attorney failed to do so, and neither the ALJ nor the Commissioner requested Dr. Ward's records.[2] Citing the absence of any treatment notes from Dr. Ward, the ALJ accorded little weight to the opinions in the questionnaire, stating:

> I note that the record is void of any treatment notes from Dr. Ward. As such, the relationship and extent of evaluation and treatment is unknown. I further note that Dr. Ward gave the above opinion after only treating the claimant on two occasions. Additionally, the claimant later reported to his primary care physician, Dr. Bianchi, that he underwent surgery on his right shoulder. As such, the responses to the November 23, 2010, questionnaire supplied to Dr. Ward by the claimant do not take into account any medical improvement that the claimant may have experienced as a result of surgical intervention. Based upon the foregoing, I give Dr. Ward's opinion little weight.

(R. 30.)

Following the ALJ's decision in this matter, Claimant retained new counsel who submitted to the Appeals Council the records requested by the ALJ. These records indicate that Dr. Ward first examined Claimant on October 6, 2010, due to complaints of shoulder and knee pain. X-rays of Claimant's right shoulder showed "degenerative changes at his greater tuberosity" and x-rays of his right knee "show[ed] medial joint space narrowing." (R. 343.) Upon examination, it was

---

[2] An ALJ has a duty to ensure that the record is adequately developed to make an informed decision about a claimant's alleged disability. It is incumbent upon the ALJ to "seek additional evidence or clarification" from a medical source when the medical source's report "contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e). Because Claimant has not raised the issue, the undersigned does not address whether the ALJ fulfilled his duty to develop the record in this case.

noted that Claimant "has a positive impingement and positive O'Brien," a negative belly press, his right knee is tender to palpation over the medial joint line, and he has a mild varus deformity. (R. 343.) Dr. Ward administered a steroid injection in Claimant's right knee and scheduled Claimant for an MRI of his right shoulder. (R. 343.) Dr. Ward next saw Claimant a week later, on October 13, 2010, following an MRI of his shoulder. Dr. Ward indicated that Claimant's physical examination "is unchanged" and that Claimant's MRI showed a "full thickness tear of the supraspinatus." (R. 344.) At Dr. Ward's request, Claimant returned for a follow-up examination on November 23, 2010. At this examination, Dr. Ward noted that Claimant was having pain in both shoulders and both knees. (R. 345.) "It is a dull[,] achy pain in his knees, which is worse when he is walking. His shoulder pain is really no different than before." (R. 345.) At this visit, Claimant was diagnosed with (1) right shoulder rotator cuff tear; (2) right shoulder impingement; (3) left shoulder impingement; and (4) bilateral knee arthritis. (R. 345.) Dr. Ward scheduled Claimant for surgery to repair the rotator cuff tear, which was performed in December 2010. (R. 345-46.)

Following his surgery, Claimant was seen by Dr. Ward on five occasions over a period of seven months. At the first post-operative visit on December 17, 2010, it is noted that Claimant is doing "quite well" with "good range of motion at the elbow, wrist, and hand," and physical therapy is prescribed. (R. 346.) On January 25, 2011, Dr. Ward indicates that Claimant is six weeks out from his surgery and doing well, though "[h]e is still having some pain." (R. 347.) Three months after the surgery and following physical therapy, Claimant returned to see Dr. Ward on March 9, 2011. At this visit, Dr. Ward notes that Claimant is "doing well" but "is still having a little pain" following the shoulder surgery and is also complaining of a dull, achy pain over the medial aspect of his right knee. (R. 348.) Examination of the right knee revealed "tenderness to

palpation over the medial joint line." (R. 348.) He had a negative Lachman and x-rays revealed "near bone-on-bone contact." (R. 348.) He was diagnosed with osteoarthritis in the right knee, and a steroid injection was given. (R. 348.) On May 10, 2011, Claimant saw Dr. Ward for a follow-up visit "for his bilateral knee pain." (R. 350.) Dr. Ward noted that the steroid injection administered in March had given him minimal relief – "He still has a dull[,] achy pain and has difficulty ambulating for long distances or standing for prolonged times." (R. 350.) Dr. Ward recommended that Claimant "continue with meloxicam and gabapentin for pain and activity modifications" and that he be seen in two to three months to check on his progress. (R. 350.) In accordance with Dr. Ward's instructions, Claimant was seen again on July 5, 2011, "for his complaints of bilateral shoulder pain and bilateral knee pain. It is a dull[,] achy pain in all of his joints." (R. 351.) Dr. Ward indicated that his physical examination "is really unchanged" and diagnosed him with "[s]tatus post right shoulder rotator cuff repair and subacromial decompression, . . . [l]eft shoulder impingement, [and] bilateral knee arthritis." (R. 351.) Dr. Ward explained:

> [A]t this point I do not really have anything to offer him. He can try some injections again if he would like. He can try some arthritis medicine. He has taken some meloxicam in the past, but he does not like taking that. I do not think that he should take chronic narcotics. He understands all of this and would just like to continue with conservative measures. We will see him back here p.r.n.

(R. 351.)

Dr. Ward's treatment notes were made a part of the record and considered by the Appeals Council prior to its denial of review. The court must, therefore, include this evidence when considering whether the Commissioner's decision is supported by substantial evidence. *Thomas*, 24 Fed. App'x at 162; *Sanders*, 2013 WL 3777198, at *4 ("Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's

decision, 'the court must review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings.'" (quoting *Felts v. Astrue*, No. 1:11CV54, 2012 WL 1836280, at *1 (W.D. Va. May 19, 2012)) (first alteration in original) (internal quotation marks omitted)).

Although not before the ALJ, Dr. Ward's treatment notes are relevant and material to the evaluation of the opinion evidence in this case and should have been considered by the Commissioner. The treatment records provide a longitudinal perspective of Claimant's orthopedic problems, including Dr. Ward's medical observations, treatment, and Claimant's response to treatment. Without the benefit of Dr. Ward's treatment notes, the ALJ was unable to determine the length of the treatment relationship and the frequency of examination, the extent of the treatment relationship or whether the opinions provided in Dr. Ward's questionnaire had changed since Claimant's rotator cuff surgery. Accordingly, the ALJ gave little weight to Dr. Ward's opinions and great weight to the opinions of two state agency consultants who did not examine Claimant. The Commissioner adopted the ALJ's decision and, in so doing, failed to properly evaluate Dr. Ward's opinions in light of the medical evidence of record.

Moreover, even assuming the ALJ was justified in discounting Dr. Ward's opinions based on potential improvement in Claimant's condition following his rotator cuff surgery, Dr. Ward's questionnaire provides important information about Claimant's other orthopedic impairments. For example, Dr. Ward opined that Claimant suffers from dull, aching pain in his left shoulder and knees with intermittent episodes of sharp pain, that the level of pain is 8 out of 10, and that Claimant is able to sit only two hours and stand or walk less than one hour in an eight-hour day, that he must get up and move around hourly for at least five to ten minutes before sitting, would need to take unscheduled breaks four to five times during an eight-hour workday, and that

13

Claimant's impairments are likely to produce "good days" and "bad days." (R. 300-05.) The ALJ found Claimant's osteoarthritis of the right knee to be a severe impairment, thus determining that this condition significantly limits Claimant's activities. Yet, the ALJ made no determination whether Dr. Ward's opinions concerning the severity and limitations caused by Claimant's arthritis are supported by the medical evidence of record.

In sum, the ALJ failed to evaluate Dr. Ward's opinions in light of all the evidence of record in this case. Because Dr. Ward's opinions are relevant and material to the disability determination in this case, the court is unable to conclude that the Commissioner's decision is supported by substantial evidence in the record and based on the proper legal standards. Accordingly, it is recommended that the case be remanded to the Commissioner with instructions that Dr. Ward's opinions be reevaluated in light of the medical evidence.

### III. Claimant's Credibility

Claimant further argues that the ALJ's assessment of Claimant's credibility is not supported by substantial evidence. In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594–95. Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 (July 2, 1996).

In addition to the objective medical evidence, the ALJ must consider the following when assessing the intensity and persistence of a claimant's pain and other symptoms:

(1) Claimant's daily activities;

(2) The location, duration, frequency, and intensity of . . . pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, received for relief of pain or other symptoms;

(6) Any measures used to relieve pain or other symptoms; and

(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3. "Factors [used] in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant." *Felton-Miller v. Astrue*, 459 Fed. App'x 226, 229 (4th Cir. 2011).

In this case, the ALJ first examined whether Claimant's medically determinable impairments could reasonably cause Claimant's symptoms and concluded that Claimant's impairments could produce such symptoms. (R. 32.) However, the ALJ then determined that his claims concerning the severity and persistence of his impairments were not supported by the evidence of record to the extent they were inconsistent with the ALJ's RFC assessment. (R. 32.) The ALJ noted perceived inconsistencies in Claimant's testimony concerning Claimant's daily activities and functional limitations. (R. 33.) The ALJ also questioned Claimant's assertion of inability to afford medical care and prescribed medications based on Claimant's testimony that he

that he has increased his tobacco use "to one pack of cigarettes every two days and the record contains notations of alcohol, marijuana and cocaine use." (R. 33.)

Claimant takes issue with the ALJ's credibility assessment, asserting that Claimant's testimony is consistent with the medical record, that his treatment record indicates Claimant has been free from recent drug use, and that Claimant testified that he did not spend money on cigarettes – that a friend provided them. (Pl.'s Mem. Supp. Mot. J. Pleadings at 12-13.) The undersigned offers no opinion with regard to the alleged inconsistencies in Claimant's testimony. However, due to the ALJ's failure to properly evaluate the opinions of Dr. Ward, it is recommended that the matter be remanded to the Commissioner with instructions that the ALJ reassess Claimant's testimony in light of the medical record as a whole, including Dr. Ward's treatment notes.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE #24] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #26] be DENIED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from receiving de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

16

This 36ýj  day of February 2014.

                                          KIMBERLY A. SWANK
                                          United States Magistrate Judge